UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN P. McCARTHY,

                                Plaintiff,

                                                        **Hon. Hugh B. Scott**

               v.                                       06CV570A

                                                        **Report
                                                        and
MICHAEL J. ASTRUE Commissioner of                       Recommendation**
Social Security[1],

                                Defendant.

_____

       Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 5 (defendant), 9 (plaintiff cross-motion)).

## INTRODUCTION

       This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

       The plaintiff, John P. McCarthy ("McCarthy" or "plaintiff"), filed an application for

disability insurance benefits on April 17, 2003.  That application was denied initially and on

reconsideration.  The plaintiff appeared before Administrative Law Judge William Vest ("ALJ"),

_____

       [1]On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
Security.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Mr. Astrue is substituted for now
former Commissioner Jo Anne B. Barnhart as Defendant in this action; no further action is
required, 42 U.S.C. § 405(g).

who considered the case <u>de novo</u> and concluded, in a written decision dated March 23, 2005, that

the plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ's decision

became the final decision of the Commissioner on June 23, 2006, when the Appeals Council

denied plaintiff's request for review.

Plaintiff commenced this action on August 24, 2006 (Docket No. 1).  The parties moved

for judgment on the pleadings (Docket Nos. 5, 9).  The motions were deemed submitted on

papers on May 14, 2007 (Docket No. 15).

## FACTUAL BACKGROUND[2]

Plaintiff was born in June 1954 and was fifty years old when the ALJ rendered his

decision.  Plaintiff has two years of college education.  (R. 30, 19.)  His past work experience

included employment as a machinist and lead machinist.  Plaintiff claims he became disabled on

March 31, 2000, due to the effects of a closed head injury and residual deficits from shoulder

injuries, but plaintiff amended his onset date to July 6, 2000, after an automobile accident.  (R.

19.)

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff suffered a closed head injury and shoulder injury in September 1998 in a work

accident that later was exacerbated in the July 2000 automobile accident.  During his treatment

following the automobile accident, plaintiff acknowledged to Dr. Lynn Warner that he used

alcohol regularly since his teenage years and had attended a 28-day rehabilitation program in the

1980s.  Following the accident, plaintiff changed from drinking hard liquor to beer and smoking

---

[2] References noted as "(R.__)" are to the certified record of the administrative
proceedings.

marijuana.  (R. 21.)  Plaintiff testified at the administrative hearing that he also used cocaine and

heroin, testifying that he ceased using cocaine and heroin months before the hearing (R. 25, 33,

626).  He stated that he spent between $200-300 per day in obtaining cocaine and heroin (R. 25).

Dr. Warner concluded that plaintiff had a frontal lobe injury and would require detoxification for

his substance use, and long-term treatment for his brain injury (id.).  Dr. Warner concluded that

plaintiff was "totally disabled" and may never be able to work (R. 27).

*ALJ's Findings*

In a thorough decision, the Administrative Law Judge found that plaintiff had not

engaged in substantial gainful activity since July 2000.  He found that plaintiff's rotator cuff

injuries, post-concussive syndrome, and substance use disorders were severe impairments, but

they singly or collectively did not meet the standards equivalent to a listed impairment under

Social Security regulations.  (R. 34, 21.)  The ALJ found that plaintiff's allegations as to his

limitations were not credible, due (in part) to smelling alcohol on plaintiff during the hearing (R.

34, 26).  The ALJ used plaintiff's stated daily drug use and the means to feed this habit as

substantial gainful activity and proof that he could sustain daily activity (R. 25).  The ALJ did not

give great weight to Dr. Warner's conclusion, since it reached the ultimate issue of disability

reserved to the Commissioner and that Dr. Warner's opinions conflicted with other opinions

(including Dr. Warner's) that plaintiff retained the ability to perform simple routine work (R. 27-

28).

The ALJ concludes that plaintiff retains the residual functional capacity to lift and carry

ten pounds frequently and twenty pounds occasionally; to stand, sit, and walk six hours in an

eight-hour day; and push/pull equal to lifting, hence light work (R. 29).  The ALJ found that

plaintiff retains the ability to perform simple, routine, repetitive tasks, conceding that his mental

function had deteriorated since the July 2000 accident but recognizing that he retained strengths

and has demonstrated daily activities that are consistent with regular and continuous simple work

(id.).

Vocational expert Robin Stromberg testified that plaintiff's past work as a machinist and

lead machinist was medium and heavy exertion, and plaintiff is unable to perform his past work

as he is limited to performing only light work (R. 29).  Applying the Medical-Vocational

Guidelines to plaintiff as a younger individual from the onset date to age 50, under Rules 202.21

and 202.14, plaintiff is deemed not to be disabled since he could perform the full range of light

work (R. 30).  Therefore, the ALJ found that plaintiff was not disabled (id.).

Alternatively, the ALJ considered giving more weight to Dr. Warner's opinion that

plaintiff is unable to sustain the functions of work (R. 30, see Murrell v. Shalala, 43 F.3d 1388

(10th Cir. 1994)).  Dr. Warner described plaintiff as being a high functioning individual prior to

the accident, but, because of the frontal lobe damage and substance use, plaintiff had deteriorated

because he lost his home, is impulsive, and so disorganized that he cannot complete tasks or

avoid being distracted (R. 21, 30-31).  Accepting Dr. Warner's opinion, the ALJ found that

plaintiff had an alternative residual functional capacity of being physically able to perform light

work (the lifting, sitting, and standing standards) but plaintiff is unable to understand, remember,

and carry out simple tasks, make routine adjustments in a work setting, or use judgment (R. 31).

As a result, at the fifth step of the analysis, plaintiff would be deemed disabled, but for his

substance use (id.), see Rule 204.00; Soc. Sec. Ruling 85-15.  The further step had to be

undertaken to determine if plaintiff's use of drugs or alcohol was a contributing factor material to

a finding of disability (id.); see 20 C.F.R. § 404.1535.  On determining whether plaintiff had a

medically determinable substance abuse disorder, the ALJ found that plaintiff's substance use

after onset much more than minimally limits his ability to perform the functions of work (R. 32,

33).  Considering the impairments that remain if plaintiff stopped using drugs or alcohol, and

resolving all doubts regarding the effects of the July 2000 head injury in plaintiff's favor, the ALJ

concluded that plaintiff still could perform the exertional demands of light work involving

simple, repetitive tasks (R. 33).  Plaintiff's residual functional capacity thus recognizes that his

physical condition and limitations remains unchanged with or without plaintiff's substance use

and his residual deficits may prevent sustained completion of complex tasks (id.).  The ALJ

adopts the opinions of Dr. Jeffrey Goodman and the psychological reviewers at the Disability

Determination Section that plaintiff retains the capacity to perform the demands of simple

repetitive work if plaintiff is not using drugs or alcohol (id.).  Thus, under the alternative residual

functional capacity, the ALJ found that plaintiff still could perform light unskilled work (R. 33)

and that plaintiff's substance use disorders are a contributing factor material to a finding of

disability (id.).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the

plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g);

Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated  Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

I.      Standard

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative  substantial gainful work which exists in the national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

6

(3) whether the impairment is listed in Appendix 1 of the relevant
regulations;

(4) whether the impairment prevents the plaintiff from continuing
his past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any
kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be

either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the

record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from

performing his past work, the ALJ is required to review the plaintiff's residual functional capacity

and the physical and mental demands of the work he has done in the past.  20 C.F.R.

§§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care

must be taken to obtain a  precise description of the particular job duties which are likely to

produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments,

working with other people, etc., in order to determine if the claimant's mental impairment is

compatible with the performance of such work."  See Social Security Ruling 82-62 (1982);

Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the

individual's ability to return to his past relevant work given his residual functional  capacity.

Washington, supra, 37 F.3d at 1442.

For a claimant engaged in drug or alcohol use, the Social Security Act precludes payment of benefits if alcoholism or drug addiction would be a contributing factor material to a determination of disability, 42 U.S.C. § 423(d)(2)(c), with "material" defined in the regulations as whether or not the claimant would be found disabled if he were to stop using alcohol or drugs, 20 C.F.R. § 404.1535(b)(1).  The Commissioner makes a separate determination to see if the physical or mental limitations would remain if claimant stopped using drugs and then determine if any of the remaining limitations would be disabling, id. § 404.1535(b)(2).

II.     Application

A.     Alleged Legal Errors

In the instant case, plaintiff first argues that there were serious legal errors in the ALJ's decision and that it should not be sustained despite being supported by substantial evidence (Docket No. 9, Pl. Memo. at 20-21).  Plaintiff next argues that the ALJ substituted his opinion for that of plaintiff's treating physicians for describing his pain, disregarding the pain aspects of his claim and focusing exclusively on mental impaired function (Docket No. 9, Pl. Memo. at 22-23).  In discussing the alternative residual functional capacity, the ALJ stated that this was not a pain case (R. 32) and plaintiff objects to this finding (Docket No. 9, Pl. Memo. at 23).  Plaintiff notes that his treating physician for the 1998 work-related shoulder injury, Dr. Sheldon Cohn, assigned permanent restrictions in March 2000, due to plaintiff's right shoulder impairment (Docket No. 9, Pl. Memo. at 23), which the ALJ apparently disregarded.

The Commissioner replies that there is substantial evidence to support the ALJ's findings that plaintiff was not disabled due to his physical condition.  The Commissioner points to the findings of the state agency doctor, Dr. Robert Castle, that plaintiff could perform exertional

demands for light work (Docket No. 6, Def. Memo. at 23; R. 544).  Dr. Castle noted that plaintiff

did not seek treatment for plaintiff's complaint of chronic headaches, plaintiff did not have

severe complications from his shoulder surgery (R. 545), plaintiff did not suffer severe memory

loss due to the head injury, and there was no evidence that plaintiff could not perform work due

to the repairs to his rotator cuff (R. 549).  Dr. Castle also noted that plaintiff was not fully

credible (R. 549).  Dr. Edward Gold, an examining physician for plaintiff's private insurer, also

found that plaintiff could perform light work with restrictions on the weight he could bear with

his right shoulder (up to fifteen pounds) and to avoid lifting overhead with the right arm (R. 298-

99).  Plaintiff complains that Dr. Gold's opinion is not as complete as that of his treating

physician, Dr. Cohn, who found that plaintiff had permanent restrictions on his right shoulder

(Docket No. 9, Pl. Memo. at 23; R. 231, 232, 234).  The Commissioner replies that Dr. Cohn's

opinions predate his onset date (Docket No. 12, Def. Reply Memo. at 2-3; R. 132 (July 2000

onset date), 229-45 (Dr. Cohn's reports from 1999 and January 2000)).  The Commissioner also

notes that the ALJ considered plaintiff's pain level, concluding that it was "mild" (Docket

No. 12, Def. Reply Memo. at 1-2; R. 20, 20-21).

 Dr. Cohn treated plaintiff from 1998 to April 2000 (R. 170, 229-54, see R. 163-228).

Dr. Gold examined plaintiff following the July 2000 accident.  Dr. Gold noted that Dr. Cohn

released plaintiff to light duty in 2000 (and that he worked at General Electric on light duty until

laid off) (R. 297).  The permanent restrictions noted by Dr. Cohn limited plaintiff to light work,

the residual functional capacity found initially by the ALJ; in fact, Dr. Cohn restricted plaintiff to

fifteen pounds while the residual functional capacity limited plaintiff to light work of no more

than ten pounds.  Thus, there is no basis here to fault the ALJ's findings.

B.      Application of Medical-Vocational Guidelines

Next, plaintiff faults the ALJ in applying the Medical-Vocational Guidelines in initially

determining that he was not disabled although plaintiff suffered from manipulative impairments

and pain (Docket No. 9, Pl. Memo. at 26-27).  He argues that the Guidelines were inappropriately

used for non-exertional impairments (id.), see Rosa v. Callahan, 168 F.3d 72 (2d Cir. 1999), and

the vocational expert should have been utilized.

The Commissioner replies that plaintiff alleged both exertional and non-exertional

impairments and, under the Guidelines rules, 20 C.F.R. § 404.1569a(d), the Guidelines could be

applied unless there is another rule that directed a finding of disability due to the claimant's

strength limitations (Docket No. 12, Def. Reply Memo. at 4-5).

No other rule applies here to direct a finding of disability due to plaintiff's strength

limitations.  As discussed above, plaintiff has the strength capability of performing light work.

C.      Illegal Activities as Substantial Gainful Activity

Plaintiff argues that the ALJ erred in speculating that plaintiff's illegal activity was

similar to substantive gainful activity in determining whether plaintiff was disabled (Docket

No. 9, Pl. Memo. at 27-28).  The Commissioner contends that plaintiff misinterprets the ALJ's

discussion on this point, that the discussion of his substance use (and the means to acquire the

substances) did not apply to step one of the analysis for substantial gainful activity (Docket No.

12, Def. Reply Memo. at 7).

The ALJ here referred to plaintiff's daily activity to maintain his cocaine and heroin

addictions as requiring "at least a minimum amount of organizing activity on a consistent basis"

(R. 25) showing that plaintiff's mental capacity after the accident (R. 25), and then later factoring

in his substance use and whether he was rendered disabled because of it.

      D.      Alternative Residual Functional Capacity and Substance Use as Factor

As for the alternative residual functional capacity analysis, plaintiff contends that the ALJ

erred either in not finding that drugs and alcohol were material in causing his disability or failing

to separate the substance use from his post-concussive syndrome to find that drug and alcohol

use were not material (id. at 28-34).  Plaintiff argues that his substance use cannot be separated

from his post-concussive syndrome, hence under Social Security rules and rulings a finding of

disability is required, arguing that his situation fell within the Social Security Administration's

emergency teletype when it is not possible to separate the mental restrictions from a claimant's

substance use (id. at 29-31).

The ALJ made thorough findings in analyzing plaintiff's substance use and determining

whether it was a factor in his disability.  His substance use predated his injuries and could be

separated from the post-concussive syndrome (R. 428 (plaintiff was highly functioning alcoholic

before accident), 626-27; see Docket No. 12, Def. Reply Memo. at 7; cf. R. 383 (reports use of

cocaine and heroin after accident)), increasing usage of cocaine and heroin after the accident (R.

626-27, 383).  The ALJ, in reviewing Dr. Warner's findings, separated plaintiff's mental

restrictions from his post-concussive syndrome from his substance use, ruling out any brain

injury that would have led to plaintiff's continued substance use (R. 32-33).  Thus, it was

possible to distinguish the head injuries here from the substance use, and the emergency Social

Security Administration teletype is not applicable.

The ALJ relied upon Dr. Warner's and Dr. Goodman's opinions, that plaintiff retains the mental capacity to perform simple, repetitive tasks (R. 523) and that his condition was materially affected by his substance use, in concluding that plaintiff was not disabled in this alternative residual functional capacity.  Since the Medical-Vocational Guidelines applicable to plaintiff called for unskilled work, see SSR 83-10, plaintiff had the mental capacity (but for his substance use) to perform unskilled work.  Therefore, it is recommended that the Commissioner's extensive findings be upheld.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **UPHELD**.  Defendant's motion for judgment on the pleadings (Docket No. 5) should be **granted** and plaintiff's cross-motion for similar relief in his favor (Docket No. 9) should be **denied**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.**  Thomas

v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995);

Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

       The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

       Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

       So Ordered.

*/s/ Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
July 23, 2007